*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Anderson, Minors.

UNPUBLISHED
February 14, 2025
2:10 PM

Nos. 369958 and 370628
Lenawee Circuit Court
Family Division
LC No. 21-000138-NA

Before: YOUNG, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

In Docket No. 369958, respondent-mother appeals as of right the order terminating her parental rights to the minor children, KEA and KYA, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if children returned to parent). In Docket No. 370628, respondent-father appeals as of right the order terminating his parental rights to the minor children under the same statutory provisions, but he challenges the trial court's earlier assumption of jurisdiction over the children. Because MCR 3.971(B)(8) bars respondent-father from challenging the assumption of jurisdiction in this appeal taken from the order terminating his parental rights, we affirm in Docket No. 370628. In addition, because petitioner made reasonable efforts to reunite respondent-mother with the children, the evidence supported the statutory grounds for termination, and the trial court's best-interests determination was not clearly erroneous, we affirm in Docket No. 369958.

## I. FACTUAL BACKGROUND

Petitioner initiated this proceeding after KYA tested positive for methamphetamine, amphetamine, Noroxymorphone, Oxymorphone, Norco, and Oxycodone shortly after her birth. Respondent-mother gave birth to KYA at home and brought KYA with her to the hospital thereafter. KYA was born prematurely and suffered from brain bleeds and seizures. Respondent-mother checked herself out of the hospital against medical advice, indicating that she wanted to be with respondent-father. While KYA was in the Neonatal Intensive Care Unit (NICU), respondents had little communication with the hospital or with Child Protective Services (CPS).

-1-

In December 2021, petitioner filed a petition for temporary custody of the children. At that time, both respondents were incarcerated. Respondent-father acknowledged paternity at the preliminary hearing, and both respondents pleaded no contest to the factual allegations contained in the petition. The trial court assumed jurisdiction over the children.

Petitioner provided both respondents with a service plan. Throughout the proceedings, respondent-mother's[1] compliance with the service plan was inconsistent. Although she attended a substance-abuse assessment, she was noncompliant with her substance-abuse screenings, outpatient services, and substance-abuse counseling. She also failed to comply with the recommendations following her psychological evaluation and failed to maintain consistent employment. In addition, she only partially complied with parenting time and failed to participate in domestic-violence treatment despite concerns of domestic violence in the home.

Petitioner ultimately petitioned to terminate respondents' parental rights. Respondent-mother expressed her intent to voluntarily relinquish her parental rights, but thereafter reconsidered and did not do so. Termination proceedings were held over the course of several months. During the proceedings, respondent-mother made additional efforts to complete her service plan. She began substance-abuse services, participated in therapy, and obtained employment. Her drug screens remained positive for marijuana, however, and she continued to deny the need for domestic-violence treatment. She also continued to live with an individual who had a history of providing her substances and verbally abusing her. Further, shortly before the final termination hearing, she took Norco, which was prescribed to her after she suffered a thumb injury at work. When asked whether she informed the doctor that she is an addict, she testified that her file reflected that fact.

The trial court determined that petitioner established the statutory bases for termination under MCL 712A.19b(3)(c)(*i*), (g), and (j), and found that termination of respondents' parental rights was in the children's best interests. This appeal followed.

## II. JURISDICTION

Respondent-father argues that the trial court had no legal basis to assume jurisdiction over the children[2] and that he was merely the children's putative father until he acknowledged their paternity. He asserts that he is entitled to a new adjudication based on allegations that arose after he established paternity.[3] He further asserts that he is able to challenge the jurisdictional ruling in

---

[1] Because respondent-father does not challenge the statutory grounds for termination or the trial court's best-interests determination on appeal, we focus on respondent-mother's efforts to comply with the service plan.

[2] Although respondent-father's brief on appeal states that the trial court lacked a legal basis to assume jurisdiction over *him*, we read his argument as challenging the trial court's assumption of jurisdiction over the children in accordance with the trial court's order.

[3] We note that respondent-father acknowledged paternity of the children before he pleaded no contest to the allegations in the petition.

this appeal because the trial court failed to advise him of his rights under MCR 3.971(B)(6), (7), and (8). We disagree.

MCR 3.971(B) provides, in relevant part:

> Before accepting a plea of admission or plea of no contest, the court must advise the respondent on the record *or in a writing* that is made a part of the file:
>
> * * *
>
> (6) that appellate review is available to challenge any errors in the adjudicatory process, which may be challenged in an appeal from the court's initial order of disposition;
>
> (7) that an indigent respondent is entitled to appointment of an attorney to represent the respondent on any appeal as of right and to preparation of transcripts; and
>
> (8) the respondent may be barred from challenging the assumption of jurisdiction in an appeal from an order terminating parental rights if they do not timely file an appeal of the initial dispositional order under MCR 7.204 or a delayed appeal under MCR 3.993(C). [Emphasis added.]

In addition, MCR 3.971(C) states that "[t]he respondent may challenge the assumption of jurisdiction in an appeal from the order terminating respondent's parental rights if the court fails to properly advise the respondent of their right to appeal pursuant to subrule (B)(6)-(8)."

In this case, the trial court advised respondent-father of his rights under subrule (B)(6)-(8) in a writing that was made a part of the file as MCR 3.971(B) expressly permits. Both respondent-father and his attorney signed the form, which included the rights stated in subrule (B)(6)-(8). Because respondent-father was properly advised of his rights, subrule (B)(8) bars him from challenging the assumption of jurisdiction in this appeal taken from the order terminating his parental rights.

## III. REASONABLE EFFORTS

Respondent-mother argues that petitioner failed to make reasonable efforts to reunite her with the children. We disagree.

"In order to preserve an argument that petitioner failed to provide adequate services, the respondent must object or indicate that the services provided to them were somehow inadequate." *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022) (quotation marks, citation, and ellipsis omitted). Because respondent-mother did not assert in the trial court that the services provided to her were insufficient to accomplish reunification, she failed to preserve her argument for appellate review. Therefore, we review respondent-mother's argument under the plain-error test. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). Under that test, respondent-mother must establish that (1) an error occurred, (2) "the error was plain, i.e., clear or obvious," and (3) "the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). An

error affected substantial rights if "it affected the outcome of the proceedings." *Id*. (quotation marks and citation omitted).

Under MCL 712A.19a(2), petitioner has a duty to make reasonable efforts to reunify a family except in certain aggravating circumstances not present in this case. *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). "As part of these reasonable efforts, [petitioner] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). While petitioner has a duty "to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). A parent must not only participate in the services, but also demonstrate a sufficient benefit from the services provided. *In re Atchley*, 341 Mich App at 339.

In this case, respondent-mother's service plan required her to: (1) participate in substance-abuse treatment, (2) participate in domestic-violence treatment, (3) comply with drug screens, (4) undergo a psychological evaluation, (5) maintain safe and appropriate housing, (6) participate in parenting time, (7) refrain from criminal activity, (8) obtain and maintain employment, (9) maintain regular contact with foster care workers and notify caseworkers of any change in circumstances, (10) follow petitioner's requests, (11) attend all court hearings, and (12) attend the children's medical appointments.

Throughout the proceedings, petitioner made efforts to facilitate respondent-mother's completion of the service plan. Petitioner provided referrals for respondent-mother to participate in drug screens, substance-abuse assessments and services, psychological evaluations, mental-health services, employment services, parenting education, and parenting time. Petitioner also provided respondent-mother with transportation support. Contrary to respondent-mother's argument, she was offered services tailored to accomplish reunification with her children.[4] Respondent-mother's compliance with the services, however, was inconsistent.

Respondent-mother contends that petitioner failed to make reasonable efforts to prevent termination because it did not advocate for therapeutic visits with the children. We disagree. The record shows that the trial court ordered therapeutic visitation, but that it was terminated because of respondent-mother's lack of participation. On the final day of the termination hearing, respondent-mother expressed a desire to begin therapeutic visits with the children, but, on the same day, the trial court terminated her parental rights. Accordingly, we conclude that petitioner made reasonable efforts to reunite respondent-mother with the children.

---

[4] During a review hearing, respondent-mother expressed dissatisfaction with petitioner's lack of assistance regarding transportation because the gas vouchers provided to her were insufficient. On appeal, respondent-mother does not specifically challenge petitioner's efforts to assist her with transportation.

## IV. STATUTORY GROUNDS

Respondent-mother also argues that the trial court erred by finding that clear and convincing evidence supported the statutory grounds to terminate her parental rights. We disagree.

We review for clear error the trial court's determination whether the statutory grounds for termination have been established. *In re Sanborn*, 337 Mich App at 272. Clear error exists if we are left with a definite and firm conviction that a mistake has been made. *Id.*

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The petitioner bears the burden of proof in this regard. *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). "If the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of respondent's parental rights." *In re Sanborn*, 337 Mich App at 273.

The trial court terminated respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which authorize the termination of parental rights under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.

MCL 712A.19b(3)(j) encompasses both physical and emotional harm. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

The children were removed from respondent-mother's care because of substance abuse, mental-health concerns, incarceration, and domestic violence. There were also concerns regarding respondent-mother's ability to provide KYA with necessary care. KYA was born prematurely,

had been exposed to narcotics in utero, and had significant medical needs. In addition, respondent-mother failed to communicate with CPS and with hospital staff while KYA was in the NICU.

At the time that petitioner filed the petition to terminate respondent-mother's parental rights, the conditions leading to adjudication had not been rectified. Respondent-mother was not in compliance with her service plan. She failed to benefit from her substance-abuse assessment, failed to participate in domestic-violence treatment, failed to submit to random drug screens, and failed to participate in intensive psychotherapy as recommended after her psychological evaluation. In addition, respondent-mother lacked stable housing and employment, she had difficulty maintaining communication with CPS, her visitation with the children was inconsistent, she engaged in criminal activity, and she absconded from probation during the proceedings.

Although respondent-mother made some progress toward completion of the service plan after petitioner filed the termination petition, serious concerns remained. She failed to address issues regarding domestic violence and continued to reside with an individual who had provided her with substances and was verbally abusive. She also continued to use marijuana despite expressing a desire to quit. In fact, she testified that if she was told that she had to stop smoking marijuana in order to visit her children, she would stop smoking marijuana. Respondent fails to appreciate that refraining from substances was included as part of her service plan from the outset, yet she continued to smoke marijuana. Further, the fact that respondent-mother had been prescribed opioids for a work-related injury led the trial court to question her level of forthrightness with her doctor, in particular whether she failed to inform the doctor of the risk that the prescribed drug posed to her.

Accordingly, the trial court did not clearly err by determining that clear and convincing evidence supported the termination of respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).

## V. BEST INTERESTS

Finally, respondent-mother argues that the trial court erred by determining that termination of her parental rights was in the children's best interests. We again disagree.

We review for clear error the trial court's best-interests determination. *In re Sanborn*, 337 Mich App at 276. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In making the best-interests determination, the trial court should consider all available evidence. *In re Atchley*, 341 Mich App at 346. Specific factors to consider include:

the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the

-6-

foreseeable future, if at all, and compliance with the case service plan. [*Id*. at 346-347.]

Further, the trial court may consider the child's age, the parent's involvement in domestic violence, the visitation history between the parent and the child, and "the parent's engaging in questionable relationships." *In re Sanborn*, 337 Mich App at 277.

The trial court did not clearly err by determining that termination of respondent-mother's parental rights was in the children's best interests. There was no bond between respondent-mother and the children, neither of whom were living at home at the time that petitioner filed the petition to remove them from respondent-mother's care. Petitioner filed the petition for removal in December 2021, when both children were under one year old. At that time, KEA was residing with respondent-mother's sister, and KYA was in the NICU. Throughout the proceedings, respondent-mother's parenting time with the children was inconsistent, and it ceased in May 2023 after petitioner filed the termination petition. The trial court correctly noted that, even before parenting time ceased, respondent-mother's bond with the children had eroded.

The trial court entered the order terminating respondent-mother's parental rights on February 21, 2024, more than two years after petitioner filed the petition to remove the children from her care. The trial court correctly reasoned that the children's need for permanency and stability prevailed over prolonging the proceedings. The record shows that, notwithstanding the duration of the proceedings, respondent-mother would not have been able to provide the children with a safe and stable home life within a reasonable time and that concerns remained regarding substance abuse and domestic violence in particular. Accordingly, the trial court did not clearly err by determining that a preponderance of the evidence supported the termination of respondent-mother's parental rights.

VI. CONCLUSION

We affirm the trial court's order in Docket No. 370628 because MCR 3.971(B)(8) bars respondent-father from challenging the trial court's assumption of jurisdiction over the children in this appeal. We likewise affirm in Docket No. 369958 because petitioner made reasonable efforts to reunite respondent-mother with the children, clear and convincing evidence satisfied the statutory grounds for termination, and the trial court's best-interests determination was not clearly erroneous.

Affirmed.

/s/ Adrienne N. Young
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace